**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

**UNITED STATES OF AMERICA**          **CIVIL ACTION NO. 3:22-CR-00184**

**VERSUS**                                          **JUDGE DAVID C. JOSEPH**

**PAUL ANTHONY LEWIS**                **MAG. JUDGE KAYLA D. MCCLUSKY**

### RULING AND ORDER

Before the Court is a MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY, filed pursuant to 28 U.S.C. § 2255 by Defendant Paul Anthony Lewis ("Lewis") (the "Motion").  [Doc. 108].  The Government filed a response to the Motion [Doc. 118], to which Lewis filed a reply and a supplemental reply to the Government's response.  [Docs. 121, 122].  After considering the arguments of the parties,[1] the record, and the relevant case law, the Motion is DENIED.

## I.      Factual Background and Procedural History

On May 24, 2022, law enforcement received information of possible narcotic activity at 702 Smith Street, in Monroe, Louisiana ("the residence").  [Doc. 101, pp. 113-14].  On May 25, 2022, Drug Enforcement Administration ("DEA") Task Force

---

[1]      The Court determined that no evidentiary hearing on the Motion was required. "When the files and records of a case make manifest the lack of merit of a Section 2255 [motion], the trial court is not required to hold an evidentiary hearing."  *United States v. Hughes*, 635 F.2d 449, 451 (5th Cir. 1981); *see also United States v. Reed*, 719 F.3d 369, 373-74 (5th Cir. 2013).  An evidentiary hearing on a § 2255 motion is required "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).

Agent Megan Russell[2] conducted surveillance and observed a mailman deliver four large packages to the residence. *Id.* at 114. Shortly after the packages were delivered, Agent Russell saw Lewis exit the house and drive away in his car. *Id.* at 114-15.

Agent Russell contacted the Ouachita Parish Sheriff's Office about Lewis's departure and asked deputies to conduct a traffic stop if they witnessed a lawful basis for doing so. *Id.* at 115. Deputies observed a traffic violation, stopped Lewis's car, and found a cell phone and seven tablets of suspected methylenedioxymethamphetamine or MDMA (commonly known as "ecstasy," and later tested and determined to contain a 10% purity of methamphetamine) in a bottle on the driver's side console. *Id.* at 122-23, 143-144, 161. Lewis was arrested, and his cell phone was seized. *Id.* at 161, 168.

While the deputies performed the traffic stop, Agent Russell conducted a "knock and talk" at the residence. *Id.* at 115. Upon arrival, Lewis's girlfriend, Francessica Rodgers ("Rodgers"), answered the door and allowed Agent Russell to enter the residence where she noticed a bag of marijuana and a bottle of promethazine cough syrup (commonly known as "codeine") in plain view. *Id.* at 115-16.

Based on this observation, Agent Russell obtained a search warrant and found:

- roughly 12 pounds of Ecstasy tablets and twelve pint-sized bottles of codeine-based cough syrup in the four boxes delivered earlier that day;

- a lunch box containing five more bottles of codeine-based cough syrup and two baggies containing crack cocaine and methamphetamine in a bedroom; and

---

[2]      Agent Russell worked at the Ouachita Parish Sheriff's Office. [Doc. 101, p. 113].

- in the kitchen, white residue in the microwave and on a mixer, which tested positive for crack.

*Id.* at 117-18, 121-22, 127, 139-141, 145, 155; [Doc. 84, ¶¶ 30, 36-39].

In the closet of a bedroom, law enforcement officers also found a black Adidas backpack containing: (i) multiple bags of tablets (totaling over 1,000 tablets) suspected to be oxycodone, but later determined to be fentanyl-based counterfeits; (ii) multiple bags containing over 200 grams of a fentanyl-based powder; (iii) a vacuum-sealed bag containing roughly 165 grams of cocaine; (iv) two large Ziploc bags containing roughly 400 grams of methamphetamine; and (v) multiple baggies containing an additional 184 methamphetamine-based knockoff "ecstasy" tablets. *Id.* at 130-138; [Doc. 84, ¶¶ 30-35].

On August 10, 2022, a federal grand jury returned a two-count Indictment against Lewis, charging him with one count of possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(viii) and one count of possession with intent to distribute codeine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). [Doc. 1]. On August 19, 2022, the Court appointed Robert S. Noel, II as the defendant's counsel. [Doc. 13]. Because Lewis bonded out of state custody after his traffic-stop arrest on May 25, 2022, the Government obtained an accompanying federal arrest warrant. [Doc. 101, pp. 168, 173]. When executing the arrest warrant on August 15, 2022, law enforcement found Lewis at the residence. *Id.* at 168. Officers then obtained a search warrant for the residence and found more cocaine and methamphetamine. *Id.* at 169. Following his detention hearing, the Court ordered the defendant detained pending trial. [Doc. 16].

Officers also obtained a search warrant for Lewis's cell phone and found communication between Lewis and others regarding drug-trafficking activity. [Doc. 101 at 161, 184-192, 198, 201, 221-222]. These messages, totaling hundreds of pages, broadly fell into two categories: (1) communications between the defendant and bulk-quantity drug suppliers; and (2) communications between the defendant and street-level dealers.[3]

On November 29, 2022, the grand jury returned an eight-count Superseding Indictment charging the defendant with conspiracy to possess with intent to distribute methamphetamine, cocaine, crack cocaine, fentanyl, and codeine, in violation of 21 U.S.C. § 841 and § 846 and 18 U.S.C. § 2 (Count 1); and possession with intent to distribute methamphetamine (Counts 2 and 7), cocaine (Counts 3 and 8), crack cocaine (Count 4), fentanyl (Count 5), and codeine (Count 6). [Doc. 42].

Lewis filed a motion to suppress all evidence obtained and discovered from the May 22, 2022, traffic stop, on grounds the stop was pretextual. [Doc. 26]. On December 19, 2022, after a hearing, the Court denied Lewis's motion. [Doc. 50].

---

[3]   Regarding the bulk-quantity drug suppliers, officers found hundreds of communications with at least five different suppliers on Lewis's phone: "Cheko," "Carton Tex," "Mexhico," "Oscar," and "Kelo." Those communications as well as explanations by law enforcement of terms used in these communications were introduced during trial. [Doc. 76-10, pp. 1-21, messages between Lewis and Checo]; [Doc. 76-9, pp. 101-133, messages between Lewis and Carton Tex]; [Doc. 76-8, pp. 22-51, messages between Lewis and Mexhico]; [Doc. 76-17, p. 14, messages between Lewis and Oscar]; [Doc. 76-13, pp. 1-21, messages between Lewis and Kelo]. The government similarly introduced various messages between Lewis and street-level dealers which indicated Lewis coordinating distribution and payment with people selling drugs to user-customers. [Doc. 76-12, pp. 3-9, messages between Lewis and "Black"]; [Doc. 76-9, pp. 145-158, messages between Lewis and Willie Ray]; [Doc. 76-9, pp. 134-144, messages between Lewis and Wil G].

Trial was conducted on February 27-28, 2023. Lewis testified in his own defense and attempted to explain the messages found on his cell phone, claiming that his cell phone was "available to the public" at large and, thus, "anybody" could have sent those messages. [Doc. 102, pp. 111-12]. He also stated that some of the messages were about "brokering trips" for a "medical transport" business. *Id.* at 115-116, 122. Lewis further contended that his ex-wife must have worked together with police and members of a local middle school's faculty to set him up, and that his ex-wife might have "hacked" his phone to plant the incriminating drug texts. *Id.* at 117-18.[4] On February 28, 2023, after two days of trial, a jury found Lewis guilty on all counts, [Doc. 77], and on May 30, 2023, he was sentenced to 240 months on all counts to run concurrently. [Docs. 89, 91]. Lewis appealed his conviction to the United States Court of Appeals for the Fifth Circuit, which affirmed his conviction on February 5, 2024. [Doc. 105].[5]

---

[4] For example, Lewis testified,

> And I feel like the only person that would make someone feel that way towards me is my ex-wife. And they are connected through the OPSO [i.e., the Ouachita Parish Sheriff's Office] and Riser Junior High…. But she also hacked my phone. It's documented she hacked my phone and sent messages to it and tried to get me to look like I was making texts about drugs.

[Doc. 102, Trial Tr. Vol. II, at 117, 118].

[5] On appeal, Lewis contended that the Government improperly called a witness it expected would not provide favorable testimony in order to impeach her with a recorded statement to law enforcement that would otherwise have been inadmissible hearsay. Lewis maintained that the recorded statement constituted the only evidence connecting him to the backpack containing narcotics. [Doc. 105, p. 4]. The Fifth Circuit rejected this argument, and judgment was entered into the district court record on February 27, 2024. [Doc. 105].

On May 1, 2025, Lewis filed the instant Motion, requesting that the Court vacate, set aside, or correct his sentence. [Doc. 108]. In his Motion, Lewis alleges that he received ineffective assistance of counsel because his attorney: (i) failed to file a motion to suppress the evidence obtained pursuant to the May 25, 2022, search warrant; (ii) failed to file a motion to suppress the evidence obtained pursuant to the August 15, 2022, search warrant; (iii) failed to investigate and challenge the validity of the conspiracy charge; (iv) failed to investigate the relationship between Agent Russell and his ex-wife; (v) failed to object to his shackling during trial; and (vi) failed to present evidence from his divorce attorney to support his argument that he did not commit perjury. All issues having been fully briefed by the parties, the Motion is ripe for review.

## II.    Law and Analysis

Lewis seeks relief pursuant to 28 U.S.C. § 2255. That section provides, as relevant here:

> (a)    A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). Section 2255 post-conviction relief is reserved for errors of constitutional dimension and other injuries that could not have been raised on direct appeal and, if left unaddressed, would result in a complete miscarriage of justice.

*United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998); *United States v. Payne*, 99 F.3d 1273, 1281 (5th Cir. 1996).

Although § 2255 proceedings are subject to certain procedural limitations, claims alleging ineffective assistance of counsel under the Sixth Amendment are properly raised in a collateral proceeding under § 2255. *Massaro v. United States*, 538 U.S. 500, 504, 123 S. Ct. 1690, 155 L. Ed. 2d 714 (2003). Such claims are analyzed under the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To prevail, a movant has the burden of showing: (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 689–94, 104 S. Ct. 2052.

To establish deficient performance, a movant must prove that his counsel's assistance fell "'below an objective standard of reasonableness.'" *United States v. Conley*, 349 F.3d 837, 841 (5th Cir. 2003), *quoting Strickland*, 466 U.S. at 688, 104 S. Ct. 2052). In other words, he must show his "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *United States v. Lincks*, 82 F.4th 325, 330–31 (5th Cir. 2023). When assessing whether an attorney's performance was deficient, the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001), *citing Strickland*, 466 U.S. at *Id.* at 689. "[T]o establish prejudice, [the movant] 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"

*Wiggins v. Smith*, 539 U.S. 510, 534, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003), *quoting Strickland*, 466 U.S. at 694.  Finally, the movant must satisfy both prongs of the *Strickland* test.  *United States v. Lincks*, 82 F.4th 325, 330 (5th Cir. 2023) ("A failure to establish either prong defeats the claim.").[6]

### A.    Pre-Trial Ineffective Assistance Claims

Lewis contends that his attorney was ineffective during the pre-trial phase when he failed to file motions to suppress evidence and failed to investigate and challenge the validity of the conspiracy charge.

### 1.    Failure to File Motion to Suppress in Connection with the May 25, 2022, Search

Lewis argues that counsel was ineffective for failing to challenge the admissibility of evidence obtained pursuant to the May 25, 2022, search warrant.  He contends that the search was invalid because a warrant was never issued, relying on his assertion that the Ouachita Parish Clerk's Office was unable to locate a copy of the warrant when he requested one.  In response, the Government contends that Lewis's challenge is based on a faulty premise because the May 22, 2022, search was conducted pursuant to a valid warrant.  According to the Government, while Lewis was being detained for a traffic violation on May 25, 2022, Agent Russell conducted a "knock and talk" at the residence located at 702 Smith Street.  Lewis's girlfriend,

---

[6]    Courts liberally construe the pleadings of *pro se* litigants and apply less stringent standards to the briefings of *pro se* parties than to those represented by counsel.  *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995).  Nonetheless, *pro se* parties must still brief the issues. *Grant*, 59 F.3d at 524.  Mere conclusory allegations are insufficient to raise a constitutional issue and *pro se* litigants are not absolved of the need to advance their own legal and factual analysis.  *See United States v. Woods*, 870 F.2d 285, 288 n. 3 (5th Cir. 1989) (per curiam); *see also Oliver v. Bankfirst*, 552 F. App'x 357, 357 (5th Cir. 2014) (per curiam).

Francessica Rodgers, answered the door and consented to Agent Russell entering the residence. [Doc. 101, p. 115]. While inside Rodgers's living room, Agent Russell observed in plain view a bag containing marijuana and a bottle of promethazine cough syrup (i.e., codeine). Based on those observations, Agent Russell obtained a search warrant, a copy of which is attached to the Government's response. *Id.* at 117; [Doc. 118-1].

Considering the foregoing, Lewis presents no viable ground for a motion to suppress as to the evidence obtained from the May 25, 2022, search warrant, and his attorney cannot be ineffective for failing to raise a meritless claim. *Sones v. Hargett*, 61 F.3d 410, 415 n. 5 (5th Cir. 1995) ("Counsel cannot be deficient for failing to press a frivolous point."); *United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995) ("Counsel is not required by the Sixth Amendment to file meritless motions."); *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) ("[C]ounsel is not required to make futile motions or objections.").

### 2. Failure to File Motion to Suppress in Connection with the August 15, 2022, Search

Lewis contends that counsel was ineffective for failing to challenge the admissibility of evidence obtained pursuant to the August 15, 2022, search warrant. [Doc. 118-2]. He argues that the affidavit supporting the warrant improperly relied on officers' detection of the odor of marijuana because, in his view, Louisiana law prohibits the odor of marijuana alone from serving as the basis for a warrantless search of a residence.

The Court presumes that Lewis is referring to Article 162.4 of the Louisiana Code of Criminal Procedure, which provides that, "Notwithstanding any provision of the law to the contrary, the odor of marijuana alone shall not provide a law enforcement officer with probable cause to conduct a search without a warrant of a person's place of residence." La. Code Crim. Proc. art. 162.4 (2025). By its express terms, Article 162.4 prohibits law enforcement from relying on the odor of marijuana alone to conduct a *warrantless* search of a person's residence. This case, however, does not involve a warrantless residential search. Rather, officers presented the facts set forth in the affidavit to a neutral judge, who determined that probable cause existed and issued a search warrant. [Doc. 118-2]. Accordingly, Article 162.4 is inapplicable by its own terms to the evidence obtained from the August 15, 2022, search.

Moreover, even assuming Article 162.4 were implicated, the admissibility of evidence in this federal prosecution is governed by the Fourth Amendment as interpreted under federal law, not by Louisiana statutory restrictions on searches. The Fifth Circuit has repeatedly held that, when evidence obtained by state officers is offered in a federal prosecution, the relevant inquiry is whether the search violated the Fourth Amendment, not whether it complied with state law. *United States v. Walker*, 960 F.2d 409, 415 (5th Cir. 1992); *United States v. Eastland*, 989 F.2d 760, 766 (5th Cir. 1993). Here, under both Louisiana and federal law, the smell of marijuana alone is sufficient probable cause to support the issuance of the search warrant. *State v. Jarquin*, 418 So. 3d 898 (La. 2025), *reh'g denied,* 425 So. 3d 1209 (La. 2025) (per curiam) ("the smell of marijuana alone is sufficient probable cause to

support the issuance of the search warrant."), *citing United States v. Thurman*, 2022 WL 2805147, at *5 (5th Cir. 2022) ("excluding the [information gained from] the protective sweeps, the search warrant's reference to the smell of marijuana emitting from the [apartment] unit supported probable cause"); *State v. Robertson*, 2014 WL 4668685, at *5 (La. App. 1st Cir. 2014) (officer had probable cause "when he detected the odor of marijuana as [the defendant's girlfriend] opened the door.").

Thus, because the smell of marijuana could properly provide the basis for a search warrant, which was obtained in this case, Lewis's attorney was not ineffective for failing to file a motion to suppress any evidence obtained from the August 15, 2022, search.

### 3. Failure to Investigate and Challenge the Validity of the Conspiracy Charge

Lewis argues that his attorney was ineffective for failing to challenge the Superseding Indictment because it charged him with conspiracy without identifying or charging any co-conspirator. [Doc. 117, p. 5].

Specifically, Count One alleged that Lewis conspired and agreed "with persons both known and unknown to the Grand Jury." [Doc. 42]. Counsel was not deficient for failing to raise such an objection because it is well established that an indictment need not identify a defendant's co-conspirators. *See United States v. Landry*, 903 F.2d 334, 338 (5th Cir. 1990) ("[A] person can be convicted of conspiring with persons whose names are unknown so long as the ... evidence supports their existence.") (cleaned up). Moreover, the evidence available to Lewis's attorney provided ample basis to conclude that the Government could establish the existence of unidentified

co-conspirators. In *United States v. Price*, the Fifth Circuit held that the defendant's possession of a portable telephone supported an inference that he communicated with co-conspirators, while the quantity of cocaine involved supported the conclusion that he could not have acted alone. 869 F.2d 801 (5th Cir. 1989). Here, counsel knew that Lewis's cellular telephone had been seized and that the Government possessed evidence of his communications.[7] Accordingly, any challenge to the conspiracy count on the ground that no co-conspirator was named in the indictment would have lacked merit, and counsel was neither deficient for failing to raise it, nor was Lewis prejudiced by its omission.

### B.    Trial Ineffective Assistance Claims

#### 1.    Failure to Investigate

Lewis contends that his attorney was ineffective for failing to investigate and determine that the "investigating officer" shared an office with his ex-wife and had a motivation to testify against him.

Counsel has a duty to make a reasonable investigation of a defendant's case or make a reasonable decision that a particular investigation is unnecessary. *Strickland*, 466 U.S. at 691. To support this type of claim, a petitioner must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial. *Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005).

---

[7]    At trial, Agent Russell testified about the numerous text messages, voice messages, and other communications that were found on Lewis's cell phone, in which Lewis communicated at length with several individuals – including Mexhico, Oscar, Kelo, Cheko, Carton Tex, Willie Ray, Wil G, and Black – about drug transactions. Therefore, trial counsel's presumed assumptions were not unreasonable. [Doc. 101, pp. 185-225].

Brief and conclusory allegations that counsel's representation was deficient because of his failure to investigate and develop useful evidence will not suffice. *Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994).

The Court presumes that Lewis is referring to Agent Russell, who investigated this case. At the beginning of his cross-examination of Agent Russell, defense counsel specifically asked if Agent Russell knew Lewis's ex-wife, and she indicated that she did not. [Doc. 101, p. 173]. Defense counsel went on to specifically state Lewis's ex-wife's name and the fact that she was a teacher at a Ouachita Parish school, and Agent Russell replied that her name did not "ring a bell." *Id.* Lewis has not presented the Court with any evidence to support his allegation that Agent Russell knew his ex-wife and conspired against him, nor has he shown what any further investigation would have revealed. Because defense counsel cannot be found to have been ineffective for failing to further investigate in light of Agent Russell's testimony, this claim is without merit.

### 2.    Failure to Object to Lewis's Shackling During Trial

The record reflects that Lewis wore leg irons during trial, and Lewis argues that his attorney was ineffective for failing to object to the shackling. [Doc. 102, p. 107].[8]

---

[8]    There is only one reference to the shackles in the record. After the Government's presentation of its case, as Lewis was about to take the stand, a U.S. Marshal stated, "You want to go ahead and seat him since he has leg irons on?" The Court responded in the affirmative, and Lewis was seated in the witness box before the jury was brought into the courtroom. [Doc. 102, p. 107].

Physical restraints visible to a jury are generally forbidden by the Fifth Amendment "absent a trial court determination, in the exercise of discretion, that they are justified by a state interest specific to a particular trial." *Deck v. Missouri*, 544 U.S. 622, 629 (2005).  The restraints may undermine "the presumption of innocence," interfere with the defendant's ability to assist in his own defense, and undermine the dignity of the judicial process.  *Id.* at 631.

The threshold issue is one of framing.  Lewis's challenge to the use of leg restraints cannot be analyzed in the abstract; the governing standard depends upon both the procedural posture and the nature of the claim asserted.  On direct appeal, a claim that a defendant was subjected to unjustified visible shackling is evaluated under *Deck v. Missouri*, 544 U.S. 622 (2005),[9] and the harmless-error framework that follows from a preserved constitutional objection.  This case, however, arises on a motion to vacate under 28 U.S.C. § 2255, where Lewis asserts ineffective assistance of counsel based on counsel's failure to object to the restraints.  In that context, the Court does not apply *Deck's* direct-appeal burden-shifting analysis; rather, Lewis bears the burden of establishing both deficient performance and resulting prejudice under *Strickland*.  *See, e.g., Ricks v. Lumpkin*, 120 F.4th 1287, 1291 (5th Cir. 2024), *cert. denied sub nom. Ricks v. Guerrero*, 146 S. Ct. 124, 223 L. Ed. 2d 27 (2025) (where

---

[9]    In *Deck v. Missouri*, the Supreme Court held that the Fifth and Fourteenth Amendments generally prohibit the routine use of *visible* physical restraints during the guilt or penalty phase of a criminal trial absent a case-specific determination that such restraints are justified by an essential state interest, such as courtroom security or escape prevention. 544 U.S. 622, 629–35 (2005).  Because *Deck* involved a preserved constitutional challenge on direct review, once a *Deck* violation is established, the burden shifts to the government to prove the error was harmless beyond a reasonable doubt.  *Id.* at 635.  Again, because this Motion arises on collateral review under § 2255 as a claim of ineffective assistance of counsel, it is governed by *Strickland*, not *Deck's* harmless-error framework.

state petitioner's petition for federal writ of habeas corpus was denied and he asked the Fifth Circuit for a certificate of appealability, Fifth Circuit denied petitioner's ineffective assistance of counsel claim on grounds trial counsel's decision to refrain from objecting to shackling was not unreasonable, reflecting that the standard for review of counsel's actions was *Strickland*). The distinction is dispositive because the question here is not whether visible shackling constituted reversible error on direct review, but whether Lewis has demonstrated a reasonable probability that the outcome of the trial would have been different had counsel objected.

Thus, even if counsel arguably should have objected, the movant still must establish a reasonable probability that the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687 (1984) ("The defendant must show that the deficient performance prejudiced the defense."). *See also United States v. Conley*, 349 F.3d 837, 841 (5th Cir. 2003) (§ 2255 movant bears the burden of establishing both deficient performance and prejudice); *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001) (accord); *United States v. Frady*, 456 U.S. 152, 167 (1982) (a § 2255 movant bears a significantly higher burden than a defendant on direct appeal).

Here, the record reflects that, before Lewis testified, the Court directed that he be seated in the witness box before the jury entered the courtroom to ensure that the jury did not observe his leg restraints. [Doc. 102, p. 107]. Nothing in the record suggests that the jury ever saw Lewis in leg irons, and Lewis offers no evidence that any juror became aware that he was restrained. Without some evidence that those precautions failed, a § 2255 movant is left to speculation that the jury saw the leg irons, and speculation is not enough to establish *Strickland* prejudice. Because the

constitutional concerns identified in *Deck* arise from the use of *visible* restraints before the jury, Lewis has failed to demonstrate a reasonable probability that the outcome of the trial would have been different had counsel objected to the use of the leg restraints.

### C.    Sentencing Ineffective Assistance Claims

Lewis contends that his attorney was ineffective at sentencing for failing to present evidence to refute the Court's finding that he committed perjury during his trial testimony. Specifically, at trial, Lewis testified that his ex-wife was friendly with Agent Russell, and that she orchestrated the investigation by falsely portraying him as a drug dealer. [Doc. 102, pp. 116-19]. He further testified at trial that he was not involved in drug trafficking. *Id.* at 119. At sentencing, the Court imposed an obstruction-of-justice enhancement based on its finding that Lewis had committed perjury, a determination Lewis unsuccessfully challenged at sentencing. [Doc. 97, pp. 3-6]. In the instant Motion, Lewis argues that documentary evidence in the possession of his divorce attorney would have corroborated his testimony regarding his ex-wife's relationship with Agent Russell and the alleged conspiracy to frame him. According to Lewis, counsel was ineffective for failing to obtain and present this evidence at trial, or to call the divorce attorney as a witness at sentencing, to demonstrate that his trial testimony was truthful and that the obstruction enhancement was unwarranted.

To show that an attorney's performance at sentencing in a noncapital case was prejudicial under *Strickland*, a defendant must demonstrate that counsel's error led to some increase in the length of his imprisonment. *Glover v. United States*, 531 U.S.

198, 203 (2001) ("[A]ny amount of actual jail time has Sixth Amendment significance."); *United States v. Herrera*, 412 F.3d 577, 581 (2005) (underestimating possible sentence by 27 months constituted deficient performance); *United States v. Conley*, 349 F.3d 837, 842 (5th Cir. 2003) (failing to object to 120-month sentence when maximum penalty was 60 months constituted prejudice).

Here, as an initial matter, Lewis has not produced the evidence that he now contends counsel should have presented at sentencing, nor has he submitted any affidavit or testimony from his divorce attorney establishing the substance of the purported evidence. More importantly, the sentencing transcript demonstrates that such evidence would not have altered the Court's decision to impose the obstruction-of-justice enhancement. At sentencing, Lewis personally argued, "I have evidence that my ex-wife tried to set me up." [Doc. 97, p. 5]. The Court responded, "And I don't think that is the part of your testimony that was unbelievable, Mr. Lewis." *Id.* at 6. Rather, the Court's finding of perjury was based on Lewis's untruthful testimony denying that his text message communications were drug transactions, notwithstanding the evidence establishing that they were.

Because the purported evidence concerning Lewis's ex-wife would not have undermined the basis for the Court's perjury finding, Lewis has failed to demonstrate either that counsel performed deficiently by not presenting it or that there is a reasonable probability the result of the sentencing proceeding would have been different had counsel done so. Accordingly, this claim fails under both prongs of *Strickland*.

## CONCLUSION

Therefore, for the reasons stated herein,

IT IS HEREBY ORDERED that movant's MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY [Doc. 108] is DENIED.  A separate judgment is entered herewith.

IT IS FURTHER ORDERED that under 28 U.S.C. § 2253(c)(2) and Rule 11(a) of the Rules Governing Section 2255 Proceedings, a Certificate of Appealability is DENIED.

THUS, DONE AND SIGNED in Chambers on this 3rd day of August 2026.

DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE